# 25-149

*To Be Argued By:*
J. BRIAN MESKILL

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

**Docket No. 25-149**

————

RAUL RIVERA-PEREZ,

*Petitioner-Appellee,*

-vs-

R. STOVER, WARDEN,

*Respondent-Appellant.*

————

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF CONNECTICUT

## BRIEF FOR RESPONDENT-APPELLANT

> MARC H. SILVERMAN
> *Acting United States Attorney*
> *District of Connecticut*
> 157 Church Street, 25th Floor
> New Haven, Connecticut 06510
> (203) 821-3700

J. BRIAN MESKILL
SANDRA S. GLOVER *(of counsel)*
*Assistant United States Attorneys*

## Federal Rule of Appellate Procedure 26.1
## Disclosure Statement

In this habeas corpus proceeding, there are no organizational victims.

i

## Table of Contents

Federal Rule of Appellate Procedure 26.1
Disclosure Statement............................................. i

Table of Authorities ........................................... iv

Statement of Jurisdiction................................. viii

Statement of Issue Presented for Review.......... ix

Preliminary Statement.......................................1

Statement of the Case ........................................2

    A.  Rivera-Perez is sentenced to a term of
        imprisonment, followed by a term of
        supervised release.......................................3

    B.  Rivera-Perez seeks habeas relief to compel
        transfer to prerelease custody....................3

    C.  The district court grants Rivera-Perez's
        habeas petition and orders the Bureau to
        calculate his unused earned-time credits
        so they can be used to reduce his term of
        supervised release.......................................6

Summary of Argument ........................................8

Argument.............................................................9

    A. Governing law and standard of review ......9

        1. The First Step Act..................................9

ii

2. 28 U.S.C. § 2241 and the standard of review ................................................... 11

B. Discussion ............................................... 11

1. The statutory text provides that earned-time credits may allow early transfer to supervised release but may not reduce the term of supervised release. ........... 12

2. An interpretation of the statutory text to only allow the use of earned-time credits for an early transfer to super-vised release or prerelease custody makes best sense of the statutory scheme ................................................. 20

Conclusion ........................................................ 29

## Table of Authorities

Pursuant to "Blue Book" rule 10.7, the government's citation of cases does not include "certiorari denied" dispositions that are more than two years old.

## Cases

*Ali v. Federal Bureau of Prisons,*
552 U.S. 214 (2008) ........................................ 20

*Anderson v. Wilson,*
289 U.S. 20 (1933) ......................................... 27

*Bartenwerfer v. Buckley,*
598 U.S. 69 (2023) ......................................... 12

*Brown v. Gardner,*
513 U.S. 115 (1994) ....................................... 17

*Clark v. Rameker,*
573 U.S. 122 (2014) ....................................... 22

*Corley v. United States,*
556 U.S. 303 (2009) ....................................... 23

*Delek US Holdings, Inc. v. United States,*
32 F.4th 495  (6th Cir. 2022) .......................... 15

*Dhinsa v. Krueger,*
917 F.3d 70 (2d Cir. 2019) .............................. 11

iv

*Dyer v. Fulgam*,
  No. 1:21-cv-299-CLC-CHS, 2022 WL 1598249
  (E.D. Tenn. May 20, 2022), *appeal dismissed
  as moot*, *Dyer v. Fulgam*, No. 22-5608 (6th Cir.
  June 8, 2023) .................................................. 12

*Guerriero v. Miami RRM*,
  No. 24-10337, 2024 WL 2017730
  (11th Cir. May 7, 2024) ........................... 12, 14

*Gustafson v. Alloyd Co., Inc.*,
  513 U.S. 561 (1995) ........................................ 15

*Levine v. Apker*,
  455 F.3d 71 (2d Cir. 2006) ............................. 11

*Nielsen v. Preap*,
  586 U.S. 392 (2019) ........................................ 20

*Poindexter v. Nash*,
  333 F.3d 372 (2d Cir. 2003) ........................... 11

*Polselli v. Internal Revenue Serv.*,
  598 U.S. 432 (2023) ........................................ 20

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
  551 U.S. 224 (2007) ........................................ 17

*Return Mail, Inc. v. U.S. Postal Serv.*,
  587 U.S. 618 (2019) ........................................ 17

*Rivera-Perez v. Stover*,
  757 F. Supp. 3d 204 (D. Conn. 2024) ...... *passim*

v

*Roberts v. Sea-Land Air Servs., Inc.*,
   566 U.S. 93 (2012) .......................................... 13

*Sackett v. Environmental Protection Agency*,
   598 U.S. 651 (2023) ........................................ 26

*Salazar v. National Basketball Association*,
   118 F.4th 533 (2d Cir. 2024), *pet'n for cert.
   filed*, No. 24-994 (Mar. 18, 2025) ................... 13

*Turkiye Halk Bankasi A.S. v. United States*,
   598 U.S. 264 (2023) ................................. 13, 21

*United States ex rel. Weiner v. Siemens AG*,
   87 F.4th 157 (2d Cir. 2023) (per curiam)....... 11

*United States v. Johnson*,
   529 U.S. 53 (2000) ......................................... 28

*Williams v. MTA Bus Co.*,
   44 F.4th 115 (2d Cir. 2022) ........................... 13

## Statutes

18 U.S.C. § 3583 ......................................... 25, 27

18 U.S.C. § 3585 ............................................. 14

18 U.S.C. § 3624..........................................*passim*

18 U.S.C. § 3632..........................................*passim*

18 U.S.C. § 4105............................................... 14

21 U.S.C. § 841 ................................................ 3

21 U.S.C. § 846 .................................................. 3

28 U.S.C. § 1291 ..............................................viii

28 U.S.C. § 2241 ...................................... viii, 2, 11

28 U.S.C. § 2253 ..............................................viii

Pub. L. No. 115-391 ....................................... ix, 9

## Rules

Fed. R. App. P. 4 ..............................................viii

## Regulations

28 C.F.R. 523.44 ................................................ 19

87 Fed. Reg. 2705 .............................................. 19

## Other Authorities

164 Cong. Rec. S7642
    (daily ed. Dec. 17, 2018) ................................ 23

vii

## Statement of Jurisdiction

Raul Rivera-Perez filed a petition under 28 U.S.C. § 2241 in the United States District Court for the District of Connecticut on October 13, 2023. Appellant's Appendix ("AA__") 1 (ECF 1), AA5–AA54. That court had jurisdiction over the petition under § 2241 because at the time of filing, Rivera-Perez was a federal prisoner serving his term of imprisonment at the Federal Correctional Institution in Danbury, Connecticut. *See* AA5. On November 18, 2024, the district court (Underhill, J.) granted Rivera-Perez's petition, and entered judgment in his favor the next day. *See* AA3 (ECF 18, 19), AA55–AA73; *see also Rivera-Perez v. Stover*, 747 F. Supp. 3d 204 (D. Conn. 2024). On January 16, 2025, the respondent warden of FCI Danbury filed a timely notice of appeal under Fed. R. App. P. 4(a)(1)(B). AA3 (ECF 20), AA74–AA75.

This Court has jurisdiction to review the final judgment of the district court under 28 U.S.C. §§ 1291 and 2253(a).

The Solicitor General has authorized this government appeal.

## Statement of Issue
## Presented for Review

Whether earned-time credits under the recidivism-reduction provisions of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), may be applied to reduce a federal prisoner's imposed term of supervised release.

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

### Docket No. 25-149

———

RAUL RIVERA-PEREZ,

*Petitioner-Appellee,*

-vs-

R. STOVER, WARDEN,

*Respondent-Appellant.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF CONNECTICUT

## BRIEF FOR THE RESPONDENT-APPELLANT

### Preliminary Statement

In 2023, while Raul Rivera-Perez was serving a federal term of imprisonment, he filed a *pro se* habeas petition arguing that the Bureau of Prisons had failed to properly calculate his earned-time credits under the First Step Act. Later, after Rivera-Perez had been released to a halfway house, the district court granted his petition, directing the Bureau to calculate Rivera-Perez's "unused" earned-time credits so that they could

be applied to reduce his term of supervised release. According to the district court, the First Step Act *requires* this result.

It does not. Under the First Step Act, earned-time credits reduce a prisoner's term of imprisonment, not a term of supervised release. The text and structure of the First Step Act reveal Congress's intent that earned-time credits allow a prisoner to begin prerelease custody or supervised release earlier than he otherwise would; that statute provides no authority to alter a prisoner's term of supervised release.

Because the district court misinterpreted the statute, this Court should reverse the district court's order, and remand with instructions to dismiss the petition as moot.

### Statement of the Case

On October 13, 2023, while he was a prisoner at FCI Danbury, Raul Rivera-Perez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court for the District of Connecticut. AA1 (ECF 1), AA5–AA54. On November 18, 2024, the district court (Underhill, J.) issued a written decision granting the petition in relevant part. *See Rivera-Perez v. Stover*, 757 F. Supp. 3d 204 (D. Conn. 2024); *see also* AA55–AA72.

2

Rivera-Perez has been released from custody and is currently serving his term of supervised release.

### A. Rivera-Perez is sentenced to a term of imprisonment, followed by a term of supervised release.

On May 11, 2001, the United States District Court for the District of Puerto Rico sentenced Rivera-Perez to a life term of imprisonment to be followed by a five-year term of supervised release on his conviction for conspiracy to distribute narcotics, in violation of 21 U.S.C. §§ 846 and 841(a)(1). *See United States v. Rivera-Perez*, 3:97-cr-245 (D.P.R.), ECF 840. That court later reduced Rivera-Perez's term of imprisonment to 360 months, but retained the five-year term of supervised release. *See id.* ECF 1010.

### B. Rivera-Perez seeks habeas relief to compel transfer to prerelease custody.

On October 13, 2023, while serving his prison term in FCI Danbury, Rivera-Perez filed a *pro se* petition for writ of habeas corpus challenging the execution of his sentence. *See* AA1 (ECF 1), AA55; *Rivera-Perez*, 757 F. Supp. 3d at 205–206. According to the petition, the Bureau of Prisons had improperly refused to release him to home confinement even though he was eligible, and, further, had failed to properly calculate his First Step Act earned-time credits. AA55; *Rivera-Perez*, 757

3

F. Supp. 3d at 206. For relief, Rivera-Perez requested an order directing the Bureau to properly calculate his earned-time credits and to immediately release him to home confinement. AA55; *Rivera-Perez*, 757 F. Supp. 3d at 206. In response, the government argued that Rivera-Perez was not entitled to placement on home confinement, and that even if the petition were construed to request, in the alternative, placement in a halfway house through application of the earned-time credits, the Bureau maintained the authority to defer Rivera-Perez's release to a halfway house due to bedspace constraints. AA55–AA56; *Rivera-Perez*, 757 F. Supp. 3d at 206.

At the time of the government's filing (December 2023), Rivera-Perez had accrued 780 earned-time credits, of which 365 credits had been allocated to early placement to supervised release. In effect, those credits brought Rivera-Perez's expected release date from December 3, 2025 to December 3, 2024. *See* AA60–AA61; *Rivera-Perez*, 757 F. Supp. 3d at 209. His remaining 415 earned-time credits were available to accelerate his transfer to prerelease custody as early as October 2023, but due to bedspace constraints in the Middle District of North Carolina, where he was to be supervised, the Bureau could not place him in a halfway house in that district when he first became eligible. *See* AA2 (ECF 9 at 6–7).

On January 17, 2024, Rivera-Perez was transferred to a halfway house in the Middle District

4

of North Carolina, and on January 19, 2024, the government moved to dismiss his habeas petition as moot. AA56, AA61; *Rivera-Perez*, 757 F. Supp. 3d at 206, 209. Although Rivera-Perez did not respond to this motion, and the district court acknowledged that the requested relief in the petition was moot, the court "liberally constru[ed]" the petition to raise an alternative argument, *i.e.*, that unused earned-time credits should be applied to reduce Rivera-Perez's term of supervised release. Accordingly, the court ordered the parties to submit supplemental briefing on the question. AA2–AA3 (ECF 16), AA56–AA57; *Rivera-Perez*, 757 F. Supp. 3d at 206–207.

In response to the court's order, the government argued that the First Step Act does not permit application of any otherwise-unused earned-time credits to shorten an inmate's term of supervised release. AA57; *Rivera-Perez*, 757 F. Supp. 3d at 207. As was the case with the government's motion to dismiss, Rivera-Perez did not respond to the court's order.

5

### C. The district court grants Rivera-Perez's habeas petition and orders the Bureau to calculate his unused earned-time credits so they can be used to reduce his term of supervised release.

On November 18, 2024, the district court issued its decision denying the government's motion to dismiss the habeas petition as moot and granting Rivera-Perez's petition for writ of habeas corpus. In relevant part, the decision concludes that the word "toward" in the statutory phrase providing that credits "shall be applied toward time in prerelease custody or supervised release" should be interpreted pursuant to its ordinary meaning in the context of the relevant phrase. AA65; *Rivera-Perez*, 757 F. Supp. 3d at 211–12. While acknowledging that the dictionary definition of "toward" "means 'in the direction of; on a course of line leading to,'" the district court concluded that "[a]pplying credits toward something ordinarily means reducing that thing," and in this context, that means that credits shall be applied to reduce a term of supervised release. AA65–AA66; *Rivera-Perez*, 757 F. Supp. 3d at 211–12.

Moreover, the court rejected the government's argument that the second sentence of § 3632(d)(4)(C) clarified the meaning of the first sentence. According to the court, that interpretation would render the second sentence "entirely

6

superfluous." AA66; *Rivera-Perez*, 757 F. Supp. 3d at 212. Instead, the court concluded that the "natural reading" of the two sentences in § 3632(d)(4)(C) is that the first sentence "allows credits to be applied to reduce a term of (i.e., 'time in') prerelease custody or supervised release, and the second sentence allows the [Bureau] to apply credits to transfer an inmate to prerelease custody or to supervised release at an earlier date." AA67; *Rivera-Perez*, 757 F. Supp. 3d at 212.

Ultimately, the court concluded that "[b]ased on the plain language of the statute, read in context, . . . [First Step Act earned-time] credits *can*—and in fact *must*, according to the mandatory language of section 3632(d)(4)(C)—be applied to reduce a term of supervised release." AA70; *Rivera-Perez*, 757 F. Supp. 3d at 214. The district court further observed that Rivera-Perez "has demonstrated that he has not received the benefit of all the [First Step Act earned-time] credits that he earned." AA70; *Rivera-Perez*, 757 F. Supp. 3d at 214. As a result, the district court granted the habeas petition and ordered that the Bureau "calculate the number of Rivera-Perez's unused [First Step Act earned-time] credits and inform the U.S. Probation Office for the Middle District of North Carolina of that calculation so that it can apply those credits toward Rivera-Perez's term of supervised release." AA72; *Rivera-Perez*, 757 F. Supp. 3d at 215.

7

As expected, Rivera-Perez was released from Bureau of Prisons custody on December 3, 2024. According to the Bureau's calculations, he was released with 258 otherwise-unused earned-time credits, and thus, as required, the Bureau notified the Probation Office in the Middle District of North Carolina of this fact.

## Summary of Argument

The First Step Act encourages federal prisoners to participate in recidivism-reduction programming and other productive activities by providing that eligible prisoners can earn additional time credits—earned-time credits—that may functionally reduce the length of their terms of imprisonment by allowing them to begin prerelease custody or supervised release earlier. Absent from the First Step Act is any suggestion that earned-time credits could also be used to reduce the length of a term of supervised release.

The district court nonetheless determined Rivera-Perez's term of supervised release must be reduced due to his "unused" earned-time credits, purporting to rely on 18 U.S.C. § 3632(d)(4)(C), but ignoring the remainder of that subsection as well as the cross-referenced statutory provision. Its interpretation contravenes the text and purpose of the First Step Act and leads to results Congress could not have intended.

The district court's order should be reversed.

8

## Argument

### A. Governing law and standard of review

#### 1. The First Step Act

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, directs the Attorney General, acting through the Bureau of Prisons, to develop a "risk and needs assessment system" for federal prisoners. 18 U.S.C. § 3632(a). The assessment system must be used to "determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly[.]" *Id.* § 3632(a)(3). The First Step Act also establishes "incentives and rewards for prisoners" who successfully complete the recidivism-reduction programming to which they are assigned. *Id.* § 3632(d).

The most significant incentive is a new system of "time credits." *Id.* § 3632(d)(4). Under this system, eligible prisoners earn ten days of time credits for every 30 days of successful participation in relevant programming. *Id.* § 3632(d)(4)(A)(i). Additionally, eligible prisoners can earn an additional five days of time credits per 30 days of programming participation if they meet certain other metrics for recidivism risk. *Id.* § 3632(d)(4)(A)(ii).

The First Step Act also directs the Bureau how to apply the new earned-time credits:

9

**(C) Application of time credits toward prerelease custody or supervised release.**—Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

*Id.* § 3632(d)(4)(C).

The cross-referenced provision, *id.* § 3624(g), was also enacted by the First Step Act. *See* § 102(b), 132 Stat. 5210. Section 3624(g) generally provides that when a prisoner's earned-time credits are equal to the amount of time remaining on the prisoner's term of imprisonment, then the prisoner shall be placed in "prerelease custody"— defined for these purposes as home confinement or confinement in a "residential reentry center" (*i.e.*, a halfway house). *Id.* §§ 3624(g)(2)(A) and (B); *see id.* § 3624(g)(1)(A). Section 3624(g) also provides that, where a prisoner has been sentenced to a term of supervised release, the Bureau of Prisons "may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." *Id.* § 3624(g)(3).

10

### 2. 28 U.S.C. § 2241 and the standard of review

"Section 2241 provides generally that the federal courts have the power to grant writs of habeas corpus, [o]n behalf of . . . prisoners who are 'in custody in violation of the Constitution or laws or treaties of the United States[.]'" *Poindexter v. Nash*, 333 F.3d 372, 377 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)) (internal citation omitted). As this Court has explained, a prisoner may file a petition under § 2241 to challenge the execution of his sentence, including a challenge to "matters such as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (internal quotations and emphasis omitted).

This Court reviews the decision to grant or deny a habeas petition *de novo. See, e.g.*, *Dhinsa v. Krueger*, 917 F.3d 70, 76 (2d Cir. 2019). Similarly, this Court reviews *de novo* questions of statutory construction. *See, e.g.*, *United States ex rel. Weiner v. Siemens AG*, 87 F.4th 157, 161 (2d Cir. 2023) (per curiam).

### B. Discussion

The district court misinterpreted the earned-time-credit provisions of the First Step Act and improperly directed the Bureau of Prisons to inform the Probation Office to apply "unused"

11

earned-time credits to reduce Rivera Perez's term of supervised release. Its decision should be reversed. As the only other Circuit Court to consider the issue has concluded, the text and structure of the statute, as well as the larger statutory context, demonstrate that § 3632(d)(4)(C) authorizes *early transfer to begin* a term of supervised release, but does not authorize any reduction of the imposed *term* of supervised release. *See Guerriero v. Miami RRM*, No. 24-10337, 2024 WL 2017730 (11th Cir. May 7, 2024).[1]

### 1. The statutory text provides that earned-time credits may allow early transfer to supervised release but may not reduce the term of supervised release.

This Court begins all statutory interpretation questions with the plain meaning of the statutory text. *See Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023) ("[W]e start where we always do: with the

---

[1] The Eleventh Circuit recognized that its conclusion was also consistent with the overwhelming weight of district court authority as well. *See id.* at \*3 (collecting cases). The only contrary authority was a decision in the Eastern District of Tennessee; the government's appeal of that decision was dismissed as moot before any appellate court decision. *See Dyer v. Fulgam*, No. 1:21-cv-299-CLC-CHS, 2022 WL 1598249 (E.D. Tenn. May 20, 2022), *appeal dismissed as moot*, *Dyer v. Fulgam*, No. 22-5608 (6th Cir. June 8, 2023).

text of the statute.") (alteration in original; internal quotation marks omitted); *Salazar v. National Basketball Association*, 118 F.4th 533, 546 (2d Cir. 2024), *pet'n for cert. filed*, No. 24-994 (Mar. 18, 2025); *Williams v. MTA Bus Co.*, 44 F.4th 115, 127 (2d Cir. 2022). Further, when interpreting a statute, "the Court must read the words Congress enacted in their context and with a view to their place in the overall statutory scheme." *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 275 (2023) (internal quotation marks omitted); *Roberts v. Sea-Land Air Servs., Inc.*, 566 U.S. 93, 101 (2012) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *Williams*, 44 F.4th at 127 ("Plain meaning draws on the specific context in which that language is used." (internal quotations and citations omitted)).

Here, the statutory text provides that earned-time credits may be used to reduce a term of *incarceration*, not a term of supervised release. In particular, § 3632(d)(4)(C) provides that earned-time credits are to be "applied *toward* time in prerelease custody or supervised release," not *against* the term of supervised release. *Id.* (emphasis added). The phrase "toward time in" means that the credits can bring a prisoner closer to, *i.e.*, "toward," that person's time in prerelease custody or supervised release. *See* Black's Law

13

Dictionary (2019) (defining "toward" as "in the direction of; on a course or line leading to (some place or something)").

Congress's word choice—*toward* supervised release instead of *against* supervised release—is significant because credits applied *toward* a thing bring that thing closer, while credits applied *against* a thing reduce the thing itself. *See Guerriero*, 2024 WL 2017730, *2 ("[C]redits applied 'toward' something generally means to bring that something closer to happening." (internal quotations omitted)). Thus, for example, Congress provided that a prisoner "shall be given credit *toward* the service of a term of imprisonment" for certain time spent in custody before his federal sentence began, if that time "has not been credited *against* another sentence." 18 U.S.C. § 3585(b) (emphasis added). In other words, time that was credited *against* another sentence (*i.e.*, reduced that other sentence) shall be credited *toward* the current term of imprisonment (*i.e.*, bring the service of the current term of imprisonment closer). *Accord* 18 U.S.C. § 4105 (granting similar "credit toward service of the sentence" for offenders previously imprisoned in a foreign country and then transferred to the Attorney General's custody). Similarly, to promote renewable fuels, Congress created a "new incentive scheme" in the Internal Revenue Code under which a fuel producer who mixes alcohol or biodiesel into its products earns a "credit[] against the [excise] tax." *Delek US*

14

*Holdings, Inc. v. United States*, 32 F.4th 495, 496–97 (6th Cir. 2022) (discussing 26 U.S.C. § 6426(a)(1)). Because the credit is "applied 'against' the gasoline excise tax, . . . [it] works to reduce the taxpayer's overall excise-tax liability." *Id.* at 499. So, too, credits applied against a sentence would reduce or shorten the sentence.

One other example: In another provision of the First Step Act, Congress amended the good-time credit program (a separate credit program) to allow a prisoner to receive "credit *toward* the service of that prisoner's sentence[.]" *See* First Step Act, § 102(a), 132 Stat. 5210 (amending 18 U.S.C. § 3624(b)). In context, that language allows a prisoner to receive good-time credits to bring closer to happening the service of a sentence. The same result applies here where Congress used identical language: The earned-time credits are to be applied to bring closer to happening the prisoner's time in prerelease custody or supervised release. Congress's use of identical language in the same statute should be given the same meaning. *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 570 (1995) (applying the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning" (internal quotations and citations omitted)). In short, credits applied *toward* a thing bring that thing closer to being obtained, while credits *against* a thing reduce the thing itself.

15

Accordingly here, when Congress provided that earned-time credits "shall be applied toward time in prerelease custody or supervised release[,]" it directed the Bureau of Prisons to apply those credits to bring a prisoner closer to prerelease custody or supervised release. Had § 3632(d)(4)(C) said, by contrast, that earned-time credits may be applied *against* time in supervised release, it would have authorized a reduction in supervised release. Instead, it says that earned-time credits may be "applied toward time in . . . supervised release." Thus, as enacted, § 3632(d)(4)(C) means that earned-time credits may lead to a prisoner starting his supervised release term earlier than expected, but the credits may not be used to reduce the term itself.

Further, this construction of the phrase "toward time in" is the best way to harmonize § 3632(d)(4)(C)'s treatment of prerelease custody and supervised release. Section 3632(d)(4)(C) provides that earned-time credits are to be applied "toward time in prerelease custody *or* supervised release." *Id.* (emphasis added). As to prerelease custody, the phrase "toward time in" undoubtedly refers to a transfer to spend time in prerelease custody, not to a reduction of the time spent in that status. After all, prerelease custody benefits a prisoner, in that it permits him to serve his custodial sentence at home or a halfway house, rather than in a traditional Bureau prison facility where he would face greater restrictions of his

16

personal liberty. So most prisoners would naturally want to transfer from prison into prerelease custody earlier rather than later, *i.e.*, to have more, not less, time in prerelease custody in relation to the overall custodial sentence. The only way to apply earned-time credits "toward time in prerelease custody" that creates an incentive for participation in recidivism-reduction programming—which is the explicit purpose of the First Step Act's creation of the earned-time credits system—is to apply those credits toward an earlier transfer to prerelease custody.

Earned-time credits cannot be applied to reduce a prisoner's time on supervised release any more than they can be applied to reduce his time in prerelease custody. The interpretive canon of consistent usage presumes that "a given term is used to mean the same thing throughout a statute," *Brown v. Gardner*, 513 U.S. 115, 118 (1994), and that canon is strongest where, as here, "the same term [is] used in related provisions enacted at the same time." *Return Mail, Inc. v. U.S. Postal Serv.*, 587 U.S. 618, 631 (2019) (relying on *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007)). So "toward time in . . . supervised release" should likewise refer to an earlier transfer to supervised release.

To be sure, if viewed in isolation (as the district court did), the phrase "toward time in . . . supervised release" could be read to suggest that earned-time credits may be applied to reduce the

17

amount of time a prisoner will serve in supervised release, in the same way that a shopper might apply store credit toward a future purchase to reduce the amount she would otherwise owe. *See* AA65–AA66; *Rivera-Perez*, 757 F. Supp. 3d at 211–12. But that cannot be a plausible interpretation here, because it yields absurd, counterintuitive results relating to prerelease custody. As used in § 3632, the word "toward" necessarily means to bring a prisoner closer to "time in prerelease custody or supervised release," not to reduce his time in prerelease custody or supervised release.

Moreover, this interpretation of the first sentence of § 3632(d)(4)(C) is confirmed by the next sentence, which directs the action to be taken once the credits are applied: "The . . . Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." § 3632(d)(4)(C). This reference to "transfer" in the second sentence is significant for two reasons. First, § 3632(d)(4)(C) explains how to apply time credits toward supervised release, so its discussion of "transfer" means that transfer is important in that process. And the issue of transfer deserves that placement only if earned-time credits affect the timing of that transfer, *i.e.*, by bringing the prisoner closer to supervised release. Second, § 3632(d)(4)(C) instructs the Bureau to transfer eligible prisoners "as determined under section 3624(g)." And

18

§ 3624(g), in turn, states that earned-time credits may be used for the Bureau to "transfer [a] prisoner to begin any . . . term of supervised release at an earlier date, . . . based on the application of time credits under section 3632." § 3624(g)(3). That confirms that earned-time credits allow a prisoner to begin supervised release ahead of schedule. In contrast, nothing in that section authorizes the Bureau, or any other entity, to reduce the duration of any term of supervised release on the basis of earned-time credits.

The Bureau's implementing regulations agree. Those regulations, which were adopted after notice-and-comment rulemaking, *see* FSA Time Credits, 87 Fed. Reg. 2705, 2706 (Jan. 19, 2022), directly address how "time credits may be applied." 28 C.F.R. 523.44(a) (capitalization omitted). As relevant here, those regulations confirm that earned-time credits may be applied "toward early transfer to supervised release" when eligibility requirements are met. 28 C.F.R. 523.44(d). The regulations do not authorize the use of earned-time credits to reduce a term of supervised release and, by negative implication, they foreclose applying time credits in that manner.

Although this reading of § 3632 best harmonizes the two sentences of that section, the district court rejected it, concluding that the Bureau's reading rendered the second sentence superfluous. AA66; *Rivera-Perez*, 757 F. Supp. 3d at

19

212. Here, though, as set out above, the two sentences are not redundant. But even if there were some slight redundancy, it is not superfluous if Congress explains something in two consecutive sentences rather than one. "[A] clause that 'still has work to do' is not superfluous." *Polselli v. Internal Revenue Serv.*, 598 U.S. 432, 443 (2023) (quoting *Nielsen v. Preap*, 586 U.S. 392, 414 (2019)). Additionally, language is not superfluous when it "remove[s] any doubt" about preceding language that might otherwise be unclear. *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 226 (2008). The first sentence of § 3632(d)(4)(C) notes that earned-time credits can be applied toward time in prerelease custody or supervised release; the second sentence "completes the work," removing any doubt that the Bureau will effect an early transfer in accordance with § 3624(g). The district court's interpretation that the two sentences allow for very different things is the much more strained interpretation.

2. **An interpretation of the statutory text to only allow the use of earned-time credits for an early transfer to supervised release or prerelease custody makes best sense of the statutory scheme.**

The government's interpretation of § 3632(d)(4)(C)—that it authorizes the use of earned-time credits to allow early transfer to supervised release or prerelease custody—not only

20

is the best interpretation of the statutory language, but also is the one that makes the most sense in the larger context of the statutory scheme. *See Turkiye Halk Bankasi A.S.*, 598 U.S. at 275 (when interpreting a statute, "the Court must read the words Congress enacted in their context and with a view to their place in the overall statutory scheme[]" (internal quotation marks omitted)). As relevant here, the government's interpretation (1) provides a continuing role for the recidivism-reduction provisions tied to the application of earned-time credits, and (2) is consistent with the Bureau's authority to alter a prisoner's sentence—or more accurately, its lack of authority.

*First*, interpreting § 3632(d)(4)(C) to allow earned-time credits to accelerate a transfer to supervised release or prerelease custody is more consistent with the larger recidivism-reduction scheme enacted in the First Step Act. Section 3624(g) contains a detailed set of requirements for a prisoner's early transfer to supervised release. For example, to be eligible for transfer, a prisoner must have earned-time credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment," which must have been "computed under applicable law." § 3624(g)(1)(A)&(C). The prisoner must also meet specific recidivism assessment thresholds: minimum or low risk in the last reassessment for transfer to supervised release. § 3624(g)(1)(D)(ii).

21

The section also provides that earned-time credits can be applied to transfer a prisoner to begin supervised release up to 12 months early. § 3624(g)(3).

But, if earned-time credits reduce time in supervised release, these requirements for early transfer to that status would be largely irrelevant. This is because, if credits reduce only time served in supervised release, then a prisoner would move from imprisonment to that status in the ordinary course. A statute should not be interpreted to render an entire subsection superfluous. *See Clark v. Rameker*, 573 U.S. 122, 131 (2014) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous." (internal quotation marks omitted)).

The district court attempted to solve this problem by concluding that the First Step Act "provides a mechanism *both* for using credits to reduce a term of incarceration and *also* for using any remaining credits to reduce a term of supervised release." AA68; *Rivera-Perez*, 757 F. Supp. 3d at 213. But that construction places into conflict the two sentences contained in § 3632(d)(4)(C), both of which use mandatory language to compel—in the district court's view—two different actions that must be carried out by two different entities. Only the government's construction of § 3632(d)(4)(C) harmonizes both sentences.

22

More fundamentally on this point, Congress took great care in describing the calculations and recidivism assessments that must be completed before a prisoner's early transfer to supervised release. It would be very odd, then, for a prisoner to be discharged from a term of supervised release without any official computation of time credits, time remaining in the term, and, perhaps most significantly, with no evaluation of the prisoner's risk of recidivism. *See* 164 Cong. Rec. S7642 (daily ed. Dec. 17, 2018) (statement of Sen. Cornyn) ("[N]obody is automatically eligible for the benefits of this program . . . they have to be evaluated to be at minimum or low recidivism risk."); *id.* at S7649 (statement of Sen. Grassley) ("Access to the earned-time credits is limited to those who pose a minimum or low risk.").

And yet the district court's interpretation of § 3632(d)(4)(C) to allow a reduction in a term of supervised release would do just that, rendering the statute's limits meaningless, and violating "one of the most basic interpretive canons, that [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (brackets in original; internal citation and quotation omitted). Here, § 3624(g) expressly prevents a prisoner with earned-time credits from being "placed in supervised release" early if the pris-

23

oner has not been "determined . . . to be a minimum or low risk to recidivate[.]" § 3624(g)(1)(D)(ii). Similar limitations apply to prisoners being placed in prerelease custody. *See* § 3624(g)(1)(D)(i). But the district court's interpretation of § 3632(d)(4)(C) could justify reducing some or all of a term of supervised release for a prisoner who had previously been deemed too risky to be eligible to apply earned-time credits for early transfer out of prison. In particular, prisoners with "unused" earned-time credits who were deemed too high of a risk to be placed in prerelease custody could eventually be released from custody only to have their term of supervised released significantly reduced or eliminated. Ironically, it would be these prisoners who would benefit most from the rehabilitative purpose of supervised release, thus showing that the district court's interpretation is incompatible with the statutory scheme.

*Second*, the government's interpretation—that it may not apply earned-time credits to reduce a term of supervised release—is consistent with the limitations on its authority in the larger statutory scheme. Although the district court interpreted § 3632(d)(4)(C) to reduce a prisoner's length of time in supervised release, as even that court recognized, *see* AA67–AA68; *Rivera-Perez*, 757 F. Supp. 3d at 213, the statute does not authorize the Bureau to actually change the prisoner's term of supervised release. This absence is

24

especially telling given that § 3624—the same section that is referenced in § 3632(d)(4)(C)—*does contain* explicit guidance to the Bureau on how to implement a separate time credit system, the good-time credit program. *See, e.g.*, 18 U.S.C. § 3624(a) (implementing the good time credit program and stating that "[a] prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence as provided . . . .").

Nor did the First Step Act amend 18 U.S.C. § 3583(e), under which a district court can modify a term of supervised release, or otherwise authorize any agency or court to reduce or terminate a term of supervised release to account for earned-time credits. Those omissions are particularly glaring in light of the second sentence in § 3632(d)(4)(C), directing the Bureau to transfer eligible prisoners to prerelease custody or supervised release. The district court addressed this void by suggesting that the authority to alter a prisoner's term of supervised release came from the passive voice construction in the second sentence of § 3632(d)(4)(C). *See* AA67–AA68; *Rivera-Perez*, 757 F. Supp. 3d at 213. But it is implausible that Congress intended earned-time credits to shorten a prisoner's term of supervised release, but yet provided no operational directive to implement that reduction. And it is more implausible

25

still that Congress would have hidden such a significant change in the structure of federal sentencing law—allowing a Probation Office to alter a term of supervised release—in the passive construction of a sentence. As the Supreme Court has repeatedly emphasized, "Congress does not hide elephants in mouseholes by altering the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Sackett v. Environmental Protection Agency*, 598 U.S. 651, 677 (2023) (internal quotations, citations and alterations omitted).

Indeed, this case illustrates this very problem. After the district court concluded that the earned-time credits must be applied to reduce Rivera-Perez's term of supervised release, it directed the Bureau to calculate Rivera-Perez's "unused" earned-time credits and "inform the U.S. Probation Office for the Middle District of North Carolina of that calculation so that it can apply those credits toward Rivera-Perez's term of supervised release." AA72; *Rivera-Perez*, 757 F. Supp. 3d at 215. In other words, the court recognized that the Bureau—the only nominal party to this action and the only party in the criminal justice system with authority to calculate and implement the earned-time credit program—had no legal or practical ability to reduce a term of supervision. Accordingly, to implement the court's conclusion here, the district court had to rely on a non-party—a Probation Office in North Carolina—to

26

take action on its behalf. But that understanding cannot be squared with the law. Although federal law allows a *district court* to modify a term of supervised release, *see* 18 U.S.C. § 3583(e), there is no suggestion that that authority applies here and there is certainly no legal authority for a *probation office* to modify a term of supervised release. Presumably, if Congress had intended to grant authority to a probation office to reduce a term of supervised release, it would have provided so in the statute.

In sum, the district court's interpretation of § 3632(d)(4)(C) to allow a reduction in a term of supervised release is incompatible with the statutory scheme Congress actually enacted. Courts are to "take the statute as [they] find it," and they need not consider "a statute differently conceived and framed[.]" *Anderson v. Wilson*, 289 U.S. 20, 27 (1933). In the First Step Act, Congress created a new earned-time credits system to encourage prisoners to engage in recidivism-reduction programs and provided that the earned-time credits could be applied toward time in prerelease custody or supervised release.

The first of the incentives—prerelease custody—renders the form of custody less onerous, because the prisoner serves his custodial sentence at home or at a halfway house, rather than in a traditional Bureau facility. 18 U.S.C. § 3624(g)(2); *see also id* § 3624(g)(4) (directing the Bureau, as practicable, to impose "increasingly

27

less restrictive conditions . . . on prisoners who demonstrate continued compliance with the conditions of such prerelease custody, so as to most effectively prepare such prisoners for reentry"); *id.* § 3624(c)(1) (likewise directing the Bureau, as practicable, to "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term . . . under conditions that will afford . . . a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community"). The second incentive—supervised release—reduces the length of custody, because the Bureau "may transfer the prisoner to begin [his] term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." *id.* § 3624(g)(3).

Viewed together, §§ 3624 and 3632 show that Congress intended earned-time credits to allow certain prisoners to reenter society earlier than they otherwise would, as a reward for their completion of recidivism-reduction programming. The statutes contemplate a prisoner starting his term of supervised release earlier, but they do not authorize a reduction in the term of supervised release itself. That makes sense because "[s]upervised release fulfills rehabilitative ends[] distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Thus, the Bureau's interpretation of § 3632(d)(4)(C) is most consistent with the larger statutory scheme.

28

## Conclusion

The First Step Act does not authorize the application of earned-time credits to reduce a term of supervised release. This Court should reverse the district court's order concluding otherwise, and remand with instructions to dismiss the habeas petition as moot.

Dated: May 1, 2025

Respectfully submitted,

MARC H. SILVERMAN
ACTING UNITED STATES ATTORNEY
DISTRICT OF CONNECTICUT

J. BRIAN MESKILL
ASSISTANT U.S. ATTORNEY

John W. Larson
Sandra S. Glover
Assistant United States Attorneys (of counsel)

29

**Addendum**

**18 U.S.C. § 3632. Development of risk and needs assessment system**

. . . .

**(d)(4) Time credits.**--

. . . .

   **(C) Application of time credits toward prerelease custody or supervised release.**--Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

**18 U.S.C. § 3624. Release of a prisoner**

. . . .

**(g) Prerelease custody or supervised release for risk and needs assessment system participants.—**

   **(1) Eligible prisoners.**--This subsection applies in the case of a prisoner (as such term is defined in section 3635) who--

      **(A)** has earned time credits under the risk and needs assessment system developed

Add. 1

under subchapter D (referred to in this sub-section as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

**(B)** has shown through the periodic risk re-assessments a demonstrated recidivism risk reduction or has maintained a mini-mum or low recidivism risk, during the prisoner's term of imprisonment;

**(C)** has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

**(D)(i)** in the case of a prisoner being placed in prerelease custody, the prisoner--

**(I)** has been determined under the Sys-tem to be a minimum or low risk to re-cidivate pursuant to the last 2 reassess-ments of the prisoner; or

**(II)** has had a petition to be transferred to prerelease custody or supervised re-lease approved by the warden of the prison, after the warden's determination that--

**(aa)** the prisoner would not be a dan-ger to society if transferred to prere-lease custody or supervised release;

Add. 2

**(bb)** the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

**(cc)** the prisoner is unlikely to recidivate; or

**(ii)** in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

**(2) Types of prerelease custody.**—A prisoner shall be placed in prerelease custody as follows:

**(A) Home confinement.**--

**(i) In general.**--A prisoner placed in prerelease custody pursuant to this subsection who is placed in home confinement shall--

**(I)** be subject to 24-hour electronic monitoring that enables the prompt identification of the prisoner, location, and time, in the case of any violation of subclause (II);

Add. 3

**(II)** remain in the prisoner's residence, except that the prisoner may leave the prisoner's home in order to, subject to the approval of the Director of the Bureau of Prisons--

**(aa)** perform a job or job-related activities, including an apprenticeship, or participate in job-seeking activities;

**(bb)** participate in evidence-based recidivism reduction programming or productive activities assigned by the System, or similar activities;

**(cc)** perform community service;

**(dd)** participate in crime victim restoration activities;

**(ee)** receive medical treatment;

**(ff)** attend religious activities; or

**(gg)** participate in other family-related activities that facilitate the prisoner's successful reentry such as a family funeral, a family

Add. 4

wedding, or to visit a family member who is seriously ill; and

**(III)** comply with such other conditions as the Director determines appropriate.

. . . .

**(iv) Duration.**--Except as provided in paragraph (4), a prisoner who is placed in home confinement shall remain in home confinement until the prisoner has served not less than 85 percent of the prisoner's imposed term of imprisonment.

**(B) Residential reentry center.**--A prisoner placed in prerelease custody pursuant to this subsection who is placed at a residential reentry center shall be subject to such conditions as the Director of the Bureau of Prisons determines appropriate.

**(3) Supervised release.**--If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

Add. 5